IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRENCE ANDERSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 10-118-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

---

Terrence Anderson.  Pro se petitioner.

Elizabeth R. McFarlan.  Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

---

**MEMORANDUM OPINION**

March  15  , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Terrence Anderson ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 2) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

While on patrol on September 30, 2005, Officers Vincent Jordan and Martin Lenhardt of the Wilmington Police Department heard numerous gunshots. *Anderson v. State*, 930 A.2d 898, 900 (Del. 2007). They followed the sounds and observed a white Dodge vehicle nose into the intersection of South Van Buren and Linden Streets. The officers also saw a black male walking backwards toward the white Dodge, while firing a black semiautomatic handgun in the direction of Hector Perez. Notwithstanding the officers' orders to drop his weapon, the man fired two more shots in the direction of Perez and then fled the scene. Officers Jordan and Lenhardt later identified the shooter as petitioner. Neither officer saw any other shooter. *Id.*

Hector Perez testified that as he walked towards his nephew Edgardo Cruz's parked car, he heard three shots. *Id.* Upon hearing the shots, Perez ran south on South Van Buren Street. Cruz corroborated Perez's testimony, stating that he saw someone get out of a white Dodge and fire two or three shots, causing Perez to run. Perez was not hit by this round of shots. After the first round of shots, Cruz testified that he looked up and saw a second shooter, later identified as petitioner, firing in the direction of a fleeing Perez. While running, Perez testified that he "felt something hot" in

his stomach and later felt another bullet hit him in the face, eventually causing him to collapse. Perez was taken to St. Francis Hospital and later Christiana Hospital for treatment. *Id*.

Petitioner initially fled on foot, but later got back into the white Dodge and sped away, heading southbound on Route I-95. Officer Mark Wohner of the Newport Police Department spotted the vehicle. After a short pursuit three occupants exited the vehicle and fled on foot. Later, Officer Donald Bluestein of the Wilmington Police Department observed two men walk out of a wooded area and enter a Ford Crown Victoria. One of those individuals was later identified as petitioner. *Id*.

The police searched the area where the shooting took place and found a silver .44 Colt revolver, a .44 caliber bullet, eight shell casings and two bullets that appeared to have been fired from a .45 Para-Ordinance semiautomatic firearm. *Id*. at 901. The police recovered a black .45 Para-Ordinance semiautomatic near the abandoned Ford Crown Victoria. *Id*.

On December 27, 2005, petitioner and his co-defendant Bobby Thomas were indicted on the charges of attempted first degree murder, first degree conspiracy, possession of a firearm during the commission of a felony ("PFDCF"), possession of a firearm by a person prohibited ("PFBPP"), five counts of misdemeanor criminal mischief, and resisting arrest. *Id*. at 899. Prior to trial, the State entered a nolle prosequi on the charges of criminal mischief and resisting arrest. *Id*. at 900.

Petitioner was tried before a Superior Court jury on the charges of first degree murder, first degree conspiracy, and PFDCF; petitioner waived his right to a jury trial on

2

the PFBPP charge, and agreed that the trial judge would decide the verdict. (D.I. 16)
On June 8, 2006, the defense moved for judgment of acquittal on all charges, which the
Superior Court denied. That same day, petitioner was convicted of first degree assault
(a lesser included offense of first degree murder), PFDCF, and PFBPP. He was
acquitted on the lesser-included charge of second degree conspiracy. Petitioner was
sentenced on September 15, 2006. This sentence, however, was reviewed on October
20, 2006, and petitioner was resentenced to four years at Level V, with credit for thirty-
one days previously served, on the first degree assault conviction; three years at Level
V on the PFDCF conviction; and eight years at Level V, suspended after three years for
six months at Level IV work release, followed by two years at Level III supervision, on
the PFBPP conviction. Petitioner appealed, and the Delaware Supreme Court affirmed
petitioner's convictions. *Id.* at 904.

Thereafter, petitioner filed in the Delaware Superior Court two motions for
modification of sentence, both of which were denied. (D.I. 16) On April 24, 2008,
petitioner filed a motion for discovery and preliminary hearing transcripts, requesting the
Superior Court to order his trial counsel to provide all materials to him. Petitioner then
filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal
Rule 61 ("Rule 61 motion"). Petitioner's trial counsel filed an affidavit in response to
petitioner's allegations of ineffective assistance. The State filed its response.
Thereafter, petitioner filed a motion titled "motion for default in state failing to file a
timely answer under the Superior Court rules." *Id.* On December 4, 2008, the Superior
Court denied petitioner's motion to compel discovery and preliminary hearing

3

transcripts, his motion for default against the State, and his Rule 61 motion. *Id.* The Delaware Supreme Court affirmed that decision. *Anderson v. State*, 981 A.2d 1172 (Table), 2009 WL 3022930 (Del. Sept. 22, 2009).

Petitioner timely filed a § 2254 application in this court. (D.I. 1)  The State filed an answer (D.I. 16), arguing that the claims either fail to warrant relief under § 2254(d) or that they should be denied as procedurally barred.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d

4

153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage

5

of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that

6

the state court adjudicated the claim on the merits in the absence of any indication or

state-law procedural principles to the contrary." *Harrington v. Richter*, ___ U.S. ___, 131

S.Ct. 770, 784-85 (2011). The Supreme Court recently expanded the purview of the

*Richter* presumption in *Johnson v. Williams*, ___ U.S. ___, 2013 WL 610199 (Feb. 20,

2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal

habeas application to a state court, and the state court opinion addresses some but not

all of those claims, the federal habeas court must presume (subject to rebuttal) that the

state court adjudicated the unaddressed federal claims on the merits. *Id.* at \*7. The

consequence of this presumption is that the federal habeas court will then be required

to review the previously unaddressed claims under § 2254(d) whereas, in the past,

federal habeas courts often assumed "that the state court simply overlooked the federal

claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at \*3. As explained by

the *Johnson* Court,

> because it is by no means uncommon for a state court to fail to address
> separately a federal claim that the court has not simply overlooked, we see no
> sound reason for failing to apply the *Richter* presumption in cases like the one
> before us now. When a state court rejects a federal claim without expressly
> addressing that claim, a federal habeas court must presume that the federal
> claim was adjudicated on the merits – but that presumption can in some limited
> circumstances be rebutted.

*Id.* at 7.

Finally, when reviewing a habeas claim, a federal court must presume that the

state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This

presumption of correctness applies to both explicit and implicit findings of fact, and is

only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1);

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S.

322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following six grounds for relief: (1) defense counsel provided ineffective assistance by failing to argue discovery violations and by failing to prepare for trial; (2) the trial court abused its discretion in denying petitioner's motion to compel discovery against his prior counsel because, without the materials requested, petitioner was unable to properly address all of his claims in his Rule 61 motion and appeal; (3) the Superior Court denied petitioner his right to appeal and due process of law by failing to grant his motion to compel; (4) the in-court identification of petitioner as the shooter was objectively unreasonable and violated his right to due process; (5) the trial court abused its discretion by failing to remove a juror who became a victim of crime during the course of trial; and (6) it was an abuse of discretion for the Superior Court to deny petitioner's motion for default against the State because the State failed to file a motion for an extension of time or file a timely response to his Rule 61 motion.

### A. Claim One: Ineffective Assistance of Counsel

In claim one, petitioner contends that defense counsel provided ineffective assistance by failing to: (a) obtain discovery, including *Brady* material; (b) file a motion to suppress; (c) investigate the case or interview witnesses; and (d) adequately prepare for trial. Within claim one (a)'s allegation regarding counsel's failure to obtain discovery, he argues that counsel failed to provide or review discovery with him and "failed to

8

request the result of the police department's ballistic and fingerprint test." The State contends that petitioner only exhausted state remedies for claim one (a), and that, because he failed to "fairly present" the allegations in claim one (b), (c), and (d) to the Delaware state courts in his Rule 61 proceeding, the court should deny these three subparts of claim one as procedurally barred. For the following reasons, the court concludes that all four subparts of claim one must be reviewed under § 2254(d)(1).

To begin, the court disagrees with the State's contention that petitioner did not "fairly present" subparts (b), (c), and (d) to the Delaware state courts in his Rule 61 proceeding. Although petitioner may have presented the subparts of the instant claim to the Superior Court in his Rule 61 motion in a rambling fashion under the general heading, "Failure to Identify and Raise this Superior Court Rule 16(a)(d) Discovery Violation Concerning Petitioner's Defendant's Right to Discovery," he did present these allegations. The Superior Court did not address each subpart independently but, rather, denied as factually baseless petitioner's entire allegation that counsel was ineffective for failing to obtain all Rule 16 discovery material. (D.I. 18, State's Ans. Br. Ex. A at 4) On post-conviction appeal, petitioner's presentation of these subparts was much clearer; although he included all four subparts of the instant claim in "Argument One" of his post-conviction appellate brief, these subparts were explicitly numbered and separately discussed. However, when the Delaware Supreme Court affirmed the Superior Court's decision, it only specifically identified petitioner's allegation regarding counsel's alleged ineffectiveness for failing to obtain or provide him with discovery. *Anderson*, 2009 WL 3022930, at *2. Notably, the Delaware Supreme Court only reached this holding after

9

stating that petitioner "argues the identical claims that he raised in his postconviction motion, motion to compel, and motion for default, with one exception." *Id.*

The court acknowledges two ways of interpreting the Delaware Supreme Court's decision. First, the Delaware Supreme Court may have viewed all four subparts of the instant claim as included in petitioner's allegation that counsel committed discovery errors, and merely summarily denied as meritless the entire first argument of petitioner's post-conviction appellate brief. This adjudication of all allegations in claim one would necessarily require review of all four subparts under § 2254(d). Or second, the Delaware Supreme Court may have simply overlooked subparts (b), (c), and (d) of the instant claim and only focused on the specific discovery failures outlined by petitioner, thereby only "adjudicating" for the purposes of § 2254(d) the specific discovery issue asserted in subpart (a) of the instant claim. This situation would normally require de novo review of the overlooked claims.

However, the court need not choose between these options. Rather, after reviewing these circumstances pursuant to the standard articulated in *Johnson*,[1] and finding that neither the State nor petitioner have rebutted the *Johnson* presumption,[2] the court presumes that the Delaware Supreme Court adjudicated all four subparts of claim one on the merits. Therefore, petitioner will only be entitled to habeas relief if the Delaware Supreme Court's denial of all the allegations in claim one was either contrary to, or an unreasonable application of, clearly established federal law.

---

[1]*Johnson*, 2013 WL 610199 at *7-*8. *See supra* at 7.

[2]Having determined that petitioner actually presented all four subparts of claim one to the Delaware Supreme Court, the court finds the State's "procedural default" argument unpersuasive. Moreover, although petitioner alleges that the Delaware state courts overlooked the issues or "didn't even read [his] complaint] (D.I. 3 at 12), petitioner's brief assertion does not rebut the *Johnson* presumption of adjudication.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to petitioner's ineffective assistance of counsel claims. Thus, the Delaware Supreme Court's decision was not contrary to *Strickland*. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

11

The court must also determine if the Delaware Supreme Court's denial of claim one as meritless involved a reasonable application of *Strickland.* To the extent petitioner contends counsel was ineffective for failing to obtain all discovery and for failing to object to alleged *Brady* violations, both the Superior Court and the Delaware Supreme Court denied the allegation as factually baseless and because petitioner failed to demonstrate prejudice. The record supports both conclusions. On March 20, 2006, the trial court ordered the State to provide all outstanding discovery, and there is nothing to indicate that the State did not comply with this order. For instance, in his Rule 61 affidavit, defense counsel asserts that he had been provided with all police reports prior to trial and that he reviewed these reports with petitioner prior to trial. Counsel further explained that he did not view any eyewitness testimony as inadmissible. The prosecutor also confirmed that all discovery had been provided to the defense prior to trial.

In this proceeding, petitioner has not provided any evidence, let alone clear and convincing evidence, to rebut the Delaware state courts' factual finding that there was no factual basis for petitioner's allegation of discovery violations. Thus, the court accepts as correct the Delaware state courts' finding that petitioner's allegation of discovery failures lacks merit. As such, petitioner cannot demonstrate that he was prejudiced as a result of counsel's performance with respect to these alleged discovery failures. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying subpart (a) of claim one.

Petitioner next contends that counsel was ineffective for failing to file a motion to suppress one of the guns that was entered into evidence, asserting that there was

12

nothing physical linking him to the gun. Petitioner focuses on the lack of fingerprint evidence and the absence of gunpowder residue on his hands. However, two police officers actually witnessed petitioner firing the gun and were able to identify petitioner as the shooter and the weapon used by petitioner as one of the guns admitted into evidence. The victim's nephew also identified petitioner as being one of the two shooters. And, in its Answering Brief for petitioner's post-conviction appeal, the State contended that there was no basis for suppression, because the guns were abandoned by petitioner as he fled the police. *See, e.g., California v. Hodari D.*, 499 U.S. 621, 629 (1991)("The gun abandoned while he was running was in this case was not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.").

In his Rule 61 affidavit, defense counsel stated that he did not have a good faith basis on which to file any motion to suppress. The aforementioned record demonstrates the reasonableness of that conclusion. In turn, given this record, petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for counsel's failure to file a baseless motion to suppress. Accordingly, subpart (b) of claim one does not warrant relief due to petitioner's failure to satisfy either prong of the *Strickland* test.

Finally, in subparts (c) and (d), petitioner contends that counsel was ineffective for failing to investigate the case, interview witnesses, or adequately prepare for trial. These generalized and conclusory assertions fail to satisfy either prong of the *Strickland* test. Accordingly, the court will deny subparts (c) and (d) of claim one.

13

## B. Claims Two, Three, and Six: Not Cognizable On Federal Habeas Review

In claims two, three, and six, petitioner contends that the Superior Court deprived him of due process during his Rule 61 proceeding by denying his motion to compel former defense counsel to produce discovery (including trial transcripts), and by denying his default motion against the State for its untimely filing of an answer in the same proceeding. These claims, however, are not cognizable on federal habeas review, because they are premised on alleged errors that occurred during petitioner's state collateral proceeding rather than the proceeding leading to his judgment of conviction. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(holding that the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding")(emphasis in original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Accordingly, the court will deny claims two, three, and six for failing to assert a proper basis for federal relief.

## C. Claim Four: In-Court Identification

In his fourth claim, petitioner contends that the in-court identification of him by two police officers deprived him of due process. However, in the Delaware state courts, petitioner did not argue that the in-court identifications violated his right to due process. Rather, in his Rule 61 proceeding, petitioner contended that counsel provided ineffective assistance by failing to object to or move to suppress the in-court identifications. Because the instant substantive due process claim is not "substantially

14

equivalent" to the ineffective assistance of counsel claim presented to the Delaware Supreme Court on post-conviction appeal, the court concludes that petitioner has not exhausted state court remedies for claim four. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

At this juncture, Delaware Superior Court Criminal Rule 61(i)(1),(2) and (3) would bar petitioner from presenting these issues to the Delaware state courts in a new Rule 61 motion. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding*); Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, petitioner's argument that the police officers' in-court identification deprived him of due process is procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

Petitioner has not alleged, and the court cannot discern, any cause for his failure to present the instant substantive due process/in-court identification claim to the Delaware Supreme Court. In the absence of cause, court will not address the issue of prejudice. Additionally, the court concludes that petitioner's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because petitioner has not provided new reliable evidence of his actual innocence.

Accordingly, the court will deny claim four as procedurally barred.

15

### D. Claim Five: Juror Bias

Petitioner's fifth claim asserts that he was denied the right to a fair trial when the trial judge did not dismiss a juror after the juror's vehicle was burglarized. Petitioner also asserts that defense counsel provided ineffective assistance by failing to object to the retention of the juror.

The record reveals that the petitioner did not present the underlying substantive claim alleging a denial of his due process rights due to juror bias to the Delaware Supreme Court on direct appeal or on post-conviction appeal. Because Delaware Superior Court Criminal Rule 61(i)(1),(2) and (3) would bar petitioner from presenting these issues to the Delaware state courts in a new Rule 61 motion, the court must treat the biased juror claim as procedurally defaulted, thereby barring review of the claim's merits absent a showing of cause and prejudice.

Petitioner has not alleged, and the court cannot discern, any cause for his failure to present this argument to the Delaware Supreme Court. Given the absence of cause, the court will not address the issue of prejudice. Additionally, petitioner's failure to provide new reliable evidence of his actual innocence precludes the court from addressing the merits under the miscarriage of justice doctrine. Thus, the court will deny this portion of claim five as procedurally barred.

To the extent petitioner contends that defense counsel provided ineffective assistance by failing to object to the retention of the juror, he has exhausted state remedies by presenting this ineffective assistance of counsel claim to both the Superior Court and the Delaware Supreme Court in his Rule 61 proceeding. The Delaware Supreme Court affirmed the Superior Court's denial of the claim as meritless. Having

16

already determined that the Delaware Supreme Court identified the proper *Strickland* standard in denying petitioner's ineffective assistance of counsel claims, the only issue remaining for the court is whether the Delaware Supreme Court's denial of the instant allegation involved a reasonable application of *Strickland*.

A criminal defendant is entitled to "a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717 (1961). If a trial court becomes aware of a possible source of juror bias, due process requires the court to "determine the circumstances, the impact therefore upon the juror, and whether or not it was prejudicial." *Remmer v. United States*, 347 U.S. 227, 230 (1954). Thus, when presented with allegations of juror bias, a trial court must conduct a hearing to determine what transpired, the impact on the juror, and whether the contact (or cause of the alleged bias) was prejudicial. *Id.* at 229; *Smith v. Phillips*, 455 U.S. 209, 216 (1982). Significantly, the defendant has the burden of proving actual juror bias, and juror testimony at a bias hearing is not inherently suspect. *Remmer*, 347 U.S. at 230; *Smith*, 455 U.S. at 217.

In this case, upon learning that a juror's vehicle had been broken into the night before, defense counsel requested that the trial judge question the juror with regard to whether or not the experience would impact his ability to decide the case impartially. The State did not oppose the request, and the trial judge questioned the juror in the manner requested by defense counsel. The juror responded that the burglary experience would not affect his impartiality. Based on that representation, the trial judge found no basis to dismiss the juror.

When denying this claim on post-conviction review, the Superior Court noted the fact that the trial court questioned the juror and found no basis for dismissal. The

17

Superior Court also noted that defense counsel asserted in his Rule 61 affidavit that he did not object at trial because he did not believe that petitioner suffered any prejudice by allowing the juror to remain on the jury or that the alternate juror would have been referred. Relying on these factors, the Superior Court concluded that defense counsel's decision "was tactical and not reasonably objectionable. [Further], [petitioner] fails to establish that had the juror been removed the outcome of his case would have been different." The Delaware Supreme Court affirmed the Superior Court's decision that petitioner's contention of ineffective assistance lacked merit.

After viewing claim five within the framework established by the aforementioned Supreme Court precedent, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying the instant claim as meritless. Following defense counsel's mention of the burglary incident with the juror, the trial court properly questioned the juror in the presence of the State and the defense about the impact, if any, the incident would have on the juror's impartiality. The juror stated the incident would not impact how he would view petitioner's case. The trial court concluded, based on the juror's assurances, that he could be a fair and impartial arbiter. This record demonstrates that the trial court satisfied it obligations under *Remmer* and *Smith*.

Moreover, in this proceeding, petitioner has not provided any reason to believe that the juror's assurances should be viewed with suspicion or were unreliable, and he has not demonstrated any juror bias. As a result, the court presumes the trial court's finding of impartiality to be correct, and concludes that petitioner cannot demonstrate any prejudice resulting from defense counsel's failure to raise a meritless objection to the trial court's failure to dismiss the juror. Accordingly, the court will deny claim five.

18

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.